UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mian and Zahra Hasan,<br>Individually and o/b/o similarly situated<br>Individuals,<br>         Plaintiffs,<br><br>         v.<br><br>GPM Investments, LLC,<br>         Defendant. | No. 3:07cv1779 (SRU) |

RULING AND ORDER ON MOTION IN LIMINE TO PRECLUDE USE OF THE
FLUCTUATING WORK WEEK

Plaintiffs, a group of workers, and defendant GPM Investments ("GPM") dispute how to calculate damages when an employer misclassifies workers as exempt from the protections of labor laws. GPM owns and operates a chain of convenience stores and gas stations along the East Coast. GPM hired plaintiffs to work as "store managers" and paid plaintiffs a fixed salary with no extra compensation for long hours. Plaintiffs filed suit claiming that federal and state laws required GPM to pay them a higher wage for hours worked in excess of 40 hours per week. GPM maintains that those laws do not apply to supervisors like store managers, and, thus, the company had no obligation to pay plaintiffs overtime. The pending motion concerns the proper formula for calculating an award should a jury find in the plaintiffs' favor.

For the reasons set forth below, plaintiffs' motion to preclude use of the fluctuating work week is granted.

DISCUSSION

A. *Background*: *FLSA and Overtime*

1

The Federal Labor Standards Act ("FLSA" or the "Act")[1] guarantees workers a minimum wage and limits the hours in a regular work week. Passed in the depths of the Great Depression, the Act was intended to ensure a "fair day's pay for a fair day's work." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942). Under the Act, an employee can only work a maximum of 40 hours in a given week, and if a worker's hours surpass that ceiling, the employer must pay for the additional hours at "a rate not less than one and one-half times the regular rate at which he is employed." 27 U.S.C. § 207(a). At a time of massive unemployment, this overtime premium applied "financial pressure [on companies so they would] spread employment to avoid the extra wage." *Missel*, 316 U.S. at 578.

The Act uses "hours" as its unit for measuring rates of pay, and this metric creates challenges in two situations. First, the Act's commands are subject to a number of exceptions. Section 13 of the Act removes supervisors, administrative staff, and professionals from the Act's reach. *See* 29 U.S.C. § 213(a)(1). Sometimes employers classify employees as exempt, pay them salaries, and then later learn a particular role did not qualify as an exempt position and workers should have been paid an extra premium for overtime. Such employees, however, have never been paid an hourly wage, and courts are left to reconstruct what their "regular rate" of pay should have been. Second, the Act allows employers to pay staff in any manner they wish – for example, by salary, piece rate, or commission. 29 C.F.R. § 778.109. Congress crafted this permissive rule in order to accommodate the "almost infinite variety of employment situations" in a free market economy. *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203-04 (1947). But when employers and employees argue over pay, courts must find ways to convert a less common compensation scheme into a standard hourly rate. At issue here is whether this case presents the

---

[1] Plaintiffs have sued under both the FLSA and the Connecticut Minimum Wage Act ("CMWA"). But the CMWA largely mirrors the FLSA with only a few differences that are not relevant to calculating the appropriate rate for overtime damages. *See Andrade v. Kwon*, No. 3:08cv749, 2012 WL 3059616 at *4 (Mar. 26, 2012).

2

first problem (reconstructing the appropriate hourly rate absent a violation), the second problem (converting a non-standard payment into an hourly rate), or both.

    B.  *The Fluctuating Work Week*

Defendants argue that this is merely an instance of an employer paying an employee something other than an hourly wage, and the challenge is not one of measuring damages, but instead converting an unusual pay scheme into an hourly rate. According to defendants, GPM paid plaintiffs for a "fluctuating work week"— plaintiffs' hours varied from week to week, and rather than submit them to unpredictable paychecks based on hours worked, the company paid them a fixed salary no matter how much time they spent on the job. Thus, plaintiffs' hourly rate of compensation differed week to week; during slow weeks it was high, and during busy times the rate dropped.

The consequence of this distinction – between imputing what an hourly rate should have been, and converting salaries into hourly rates—is enormous. By way of example, suppose an employee makes a weekly salary of 1200 dollars. A court is faced with the task of putting her in the position she might have been in absent a violation. If court divides her salary by the legal limit of 40 hours, it gets a regular rate of 30 dollars per hour. In a week when the employee worked 60 hours, she would receive time and half, or 45 dollars per hour, for that additional 20 hours of overtime. Thus, her total compensation should have totaled 2100 dollars (1200 dollars in base salary plus 900 dollars in overtime).

But what if a court is faced with a fluctuating work week, not a standard overtime violation? In that same 60-hour week, the worker's 1200 dollar salary only compensated her at a rate of 20 dollars an hour, not 30. And, for the additional 20 hours she only wins an overtime supplement of 10 dollars – she has already gotten the base rate of 20 dollars for every hour she

worked, including the extra hours, and was only deprived of the slight bump of an unpaid half-time premium. For that week, then, she would only receive two-thirds of the standard calculation or 1400 dollars (1200 dollars in base salary plus 200 dollars in an unpaid overtime premium). This math adds up to a perverse incentive— "the longer the hours the less the rate of pay per hour." *Missel*, 316 U.S. at 580.

      C. <u>*Missel* and the Department of Labor's Guidelines on Fluctuating Work Week Agreements</u>

GPM acknowledges that the fluctuating work week results in lower awards, *Def. Opp.* at 15, but notes that the Supreme Court has long sanctioned such an arrangement. In *Overnight Motor Transp. Co. v. Missel*, *supra*, the Supreme Court allowed a trucking company to pay a fixed salary to a rate clerk who worked varying hours, sometimes clocking long hours logging shipments in busy seasons, and working far fewer hours during lulls. 316 U.S. at 574, 580. The case presented the Court with a different issue: the employer argued that the FLSA only required that companies pay high enough salaries to cover the statute's minimum wage requirement, and any overtime only had to compensate employees at one and a half times that minimum wage rate. The Court held otherwise; the statute covered all levels of "pay by the week, to be reduced by some method of computation of [an] hourly rate," and that rate, rather than the minimum wage, should be used to calculate overtime. *Id* at 579. It noted that Missel's contract set "no . . . limit upon the hours which petitioner could have required respondent to work for the agreed upon wage . . . and [did not include a] provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage." *Id.* at 581. Thus, the employer could not argue that both parties had understood that the base rate of pay was merely minimum wage, in the words of the Court, "implication cannot mend a contract so deficient in complying with the law." *Id.*

4

The Court then turned to calculating the appropriate rate of compensation. It focused on the facts underlying Missel's contract with Overnight Motor Transport: "Where the employment contract is for a weekly wage with variable or fluctuating hours," the hourly rate of compensation will rise and fall each week according to the number of hours worked. *Id.* at 580. Since the parties agreed to fluctuating rates of compensation, a court should calculate the compensation the week by week, based on a variable rate. *Id.* at 580.

Though *Missel* allows employers to pay employees at fluctuating rates, the opinion provides little guidance about how to distinguish contracts for varying rates of compensation from a standard salaried position. In an attempt to simplify the application of *Missel*, the Department of Labor ("DOL") issued "an interpretive rule intended to codify [the decision]." *Russell v. Wells Fargo and Co.*, 672 F. Supp. 2d 1008, 1011 (N.D. Cal. 2009) (relying on *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003)). The rule lays out two requirements for contracts with fluctuating compensation rates. First, the employee and employer must have a "clear mutual understanding" that the "fixed salary is compensation (apart from overtime premiums) for the hours worked each work week." 29 C.F.R. § 778.114(a). In other words, the parties must strike a bargain that includes two terms— as the main clause instructs, that a fixed salary will cover base pay no matter the hours worked, and, as the parenthetical phrase suggests, that employers will cover overtime hours with a separate bonus. The rule goes onto instruct that overtime will fluctuate depending on the total number of hours worked: "Since . . . the regular rate of the employee will vary from week to week . . . [p]ayment for overtime hours" will also vary. *Id.*

Second, the employee must receive payment of a contemporaneous premium for overtime hours. According to the rule, employers must include extra pay for overtime in employee's

regular paychecks; in the rule's words, "where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating work week overtime formula." 29 C.F.R. § 778.114(c); *see also Russell*, 672 F. Supp. 2d at 1012 (terming this sentence the "contemporaneous payment" requirement). The FLSA mandates that an employee receive a higher rate of compensation for extra hours, and if a paycheck compensates every hour in a week at a constant rate, then the employer has not kicked-in a bonus for overtime.

The DOL issued its guidance without entertaining comments from outside stakeholders, and the rule merits less deference than one that has survived the gauntlet of a more formal process. *See Christensen v. Harris Co.*, 529 U.S. 576 (2000) (holding that agency rules passed outside of a formal adjudication or notice-and-comment rulemaking deserve less deference). But the agency is still the institution with the greatest "body of experience" with the FLSA, and its "informed judgment" should have the "power to persuade." *Skidmore v. Swift Co.*, 323 U.S. 134, 139 (1944). Indeed, even Circuit Courts that have declined to hew to the rule's criteria have acknowledged that the DOL's position is "entitled to a measure of respect" and is a "reasonable construction of the FLSA's overtime requirements." *Urnikis-Negro v. Am. Family Prop. Serv.*, 616 F. 3d 665, 676 (7th Cir. 2010).[2]

---

[2] In a nearly identical case, the Seventh Circuit declined to use the DOL's rule as a guide. The rule, it reasoned, is "forward looking," and only describes how employers and employees should structure an agreement for future compensation. *Urnikis-Negro*, 616 F.3d at 677. The rule is not designed, nor can it be used, the court held, to fashion a remedy for a violation in the past.

But courts always look backwards— cases only arise after an arrangement sours. While the DOL's rule certainly provides instructions to parties seeking to form a lawful agreement, it also provides criteria for courts to separate a contract for fluctuating compensation from an agreement for a standard salary. Even in a more typical fluctuating work week case, one in which an employer and employee disagree about the existence of a contract for variable compensation, a court will use the rule to assess the legality and nature of the parties' *past* agreement. That is exactly what is required here: GPM asserts that it hired the plaintiffs to work a fluctuating work week. Both

D.  *The Fluctuating Work Week in a Misclassification Case*

Plaintiffs contend that the fluctuating work week method of compensation is never appropriate in a case where an employer has misclassified an employee as exempt from the FLSA's protections. They argue that misclassification cases only present one issue – how to reconstruct what the rate of pay would have been absent a violation. Defendants counter that in a misclassification case "a fixed salary is always meant to compensate for all hours worked," and under *Missel*, a fluctuating work week calculation "provides the precise remedy." *Def. Opp.* at 12. In other words, a misclassification case does not require that the court recreate a rate, but, instead, that it convert a unusual payment method into an hourly rate. Plaintiffs have the better argument and one need look no further than the DOL's guidance to understand why.

When an employer misclassifies an employee, the resultant employment contract will never fulfill any of the requirements of section 778.114. First, parties who believe that an employee merits no overtime payment cannot simultaneously believe that any overtime will be paid at varying rates. Put another way, in a misclassification case, the parties never agreed to an essential term of a fluctuating work week arrangement—that overtime would be paid at different rates depending on the number of hours worked per week. *See Perkins v. Southern New England Telephone Co.*, 2011 WL 4460248 at *3 (D. Conn. Sept. 27, 2011), *Russell*, 672 F. Supp. 2d at 1013-14, *Rainey v. Am. Forest & Paper Assoc.*, 26 F.2d 82, 100-02 (D.D.C. 1998). To assume otherwise converts every salaried position into a position compensated at a fluctuating rate.

Second, misclassified employees will never have received any kind of bonus or premium for overtime. Indeed, parties will have explicitly agreed, as they did in this case, that employees will not earn extra money for long hours. *See Def. Opp. Ex. A Job Description* (listing the

---

*Missel* and the DOL's rule codifying *Missel* provide guidance on how to determine whether parties came to such an agreement or not.

7

position as explicitly "exempt" from overtime compensation). At best, an employer could argue that the flat salary had an overtime bump embedded within it, that it was high enough so that employees remained well compensated for the hardship of working more than 40 hours per week. But this argument fails for two reasons: First, such an agreement would be illegal. An employee would have to waive her statutory right to extra compensation for overtime. *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (noting that "FLSA rights cannot be abridged by contract" because this would "nullify the purposes of the statute"). Second, *Missel* explicitly rejected such an argument. The court reasoned that the contract at issue did not comply with the FLSA because " it [did not include a] provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage." *Missel*, 316 U.S. at 581.

In this case, GPM also fails to meet a third criterion enunciated in the DOL's guidance—that an employee's hours actually fluctuate. After it lays out the requirements for a contract for a fluctuating rate, the rule warns that "typically, such salaries are paid to employees who do not customarily work a regular schedule of hours" and are "in amounts agreed on by the parties as adequate straight-time compensation for long work weeks as well as short ones." 29 C.F.R. § 778.114(c). For a fluctuating work week arrangement to make sense to both parties, employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work. This is what the Court divined in *Missel*; a rate clerk would sometimes work long hours when shipments flooded in, and sometimes not at all when business dried up.[3] Here, plaintiffs

---

[3] Though the Supreme Court did not review Missel's pay records, the District Court did. The lower court noted that "his periods of work varied greatly from day to day," and that he was paid full salary even in weeks where he did not work at all. *Missel v. Overnight Motor Transp. Co.*, 40 F. Supp. 174, 176 (D. Md. 1941).

8

never had a short week; GPM's job description stated that store managers were expected to work a minimum of 52 hours per week. *See Def. Opp. Ex. A, Job Description.* To the extent their hours fluctuated, it was because they sometimes worked almost 100 hours per week. *See Plaintiff's Motion in Limine, Ex. A, Timesheets.* This variance, between weeks with a moderate amount of overtime hours, and weeks where a majority of hours worked exceeded the 40 hour threshold, is not the same as the up and down fluctuation contemplated by the DOL and by the Court in *Missel*.[4]

CONCLUSION

In this case, as is the case with most FLSA claims, if a jury finds GPM liable for failing to pay overtime, this court will have to review the evidence in the record and determine at what rate an employee would have been paid absent a violation. That decision, however, will not rely on the fluctuating work week method of calculating rates of pay.[5] Plaintiffs' motion in limine (doc. # 237) is granted.

It is so ordered.

Dated at Bridgeport, Connecticut, this 27 day of August 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[4] The 52 hour minimum requirement also distinguishes this case from arrangements such as the one in *Urnikis-Negro*. There, a real estate firm offered to pay an appraiser a yearly salary of $52,000.00 no matter the time spent on the job; at the time the parties entered into a contract, neither party mentioned a minimum hourly requirement. 616 F. 3d at 667.

[5] In its brief, GPM argues that even if the Court were to reject the use of the fluctuating work week in this case, the Court should determine the plaintiffs' regular rate by dividing their salaries by 52 hours, not 40. Defendant points to the plaintiffs' job description as evidence to support its claim—the description clearly states that store managers should expect to work a minimum of 52 hours per week. The Court takes no position at this time regarding the proper denominator for calculating plaintiffs' damage award. Should the jury find in favor of the plaintiffs, the Court will hold a hearing on damages in which GPM can present evidence on the proper base rate of pay.